# EXHIBIT A

IN THE CIRCUIT COURT OF
THE ELEVENTH JUDICIAL CIRCUIT,
IN MIAMI-DADE COUNTY, FLORIDA

MICHAEL FRIDMAN, individually and
on behalf of all those similarly situated,

                Plaintiff,

                                            Case No.:

v.

1-800 CONTACTS, INC.

                Defendant.
                                              /

## CLASS ACTION COMPLAINT

Plaintiff, Michael Fridman, appearing both individually and on behalf of all others similarly situated, by and through his attorneys, brings this class action against Defendant, 1-800 Contacts, Inc., based upon personal knowledge as to his own acts and experiences and, as to all other matters, based upon information and belief, including the investigation conducted by his counsel, and alleges as follows:

### NATURE OF THE ACTION

1.       This is a class action under the Florida Security of Communications Act, Fla. Stat. § 934.01, *et seq.* ("FSCA"), against Defendant, 1-800 Contacts, Inc. ("Defendant" or "1-800 Contacts"), arising from Defendant's unlawful interception—or "wiretapping"—of Plaintiff's and Class Members' electronic communications with the website 1800contacts.com (the "Website").

2.       Specifically, Defendant uses wiretaps, which are embedded in the computer code on the Website, to intercept Plaintiff's and Class Members' electronic communications with Defendant's Website.

3. To accomplish this wiretapping, Defendant uses tracking, recording, and/or "session replay" software to secretly observe and record Plaintiff's and Class Members' electronic communications with the Website, including their keystrokes, mouse movements and clicks, information inputted into the Website, and/or pages and content viewed on the Website.

4. Defendant intercepted or allowed for the interception of the electronic communications at issue without the knowledge or prior consent of Plaintiff and the Class Members, for its own financial gain.

5. By doing so, Defendant has invaded Plaintiff's and Class Members' privacy rights under Florida Law and violated the FSCA, Fla. Stat. §§ 934.03 and 934.04. Defendant has caused Plaintiff and Class Members to suffer injuries as a result of invading their privacy and/or exposing their private information.

6. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful wiretapping. Plaintiff additionally seeks damages as authorized by the FSCA on behalf of Plaintiff and the Class Members, and any other available legal or equitable remedies resulting from the actions of Defendant described herein.

**THE PARTIES**

7. Plaintiff, Michael Fridman ("Plaintiff" or "Fridman"), is a citizen and resident of Miami-Dade County, Florida.

8. Defendant, 1-800 Contacts, Inc. ("Defendant" or "1-800 Contacts"), is a legal corporation incorporated in Delaware with its principal place of business in Draper, Utah.

9. 1-800 Contacts operates as a direct marketer of contact lenses. 1-800 Contacts offers a wide range of contact lenses through its Website to customers in the United States, including in Florida.

10. 1-800 Contacts owns and operates 1800contacts.com (the "Website"). 1-800-Contacts conducts substantial and not isolated activity and business in Florida.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.220 and Fla. Stat. § 26.012(2). The matter in controversy exceeds the sum or value of $30,000, exclusive of interest, costs, and attorneys' fees.

12. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with Florida. Plaintiff's and Class Members' used the Website in Florida. Defendant's unlawful interception of those electronic communications without the consent of Plaintiff and Class Members therefore occurred in Florida, and Plaintiff and Class Members were injured by Defendant's acts while residing and physically present in Florida.

13. Venue for this action is proper in this Court because all facts giving rise to this action occurred in this Circuit.

## STATEMENT OF FACTS

**Wiretapping via Session Replay Software**

14. At all relevant times herein, 1-800 Contacts has engaged Quantum Metric, Inc. ("QM"), a marketing software-as-a-service ("SaaS") company, to provide marketing analytics software for its Website.

15. QM is a Delaware corporation with its principal place of business in Colorado Springs, Colorado.

16. QM develops, owns, and markets a software of the same name that provides marketing analytics, which is used by 1-800 Contacts on its Website.

3

17. QM software provides a feature called "Session Replay," which purports to help businesses improve their website design and customer experience. QM operates on both desktop and mobile devices.

18. According to QM, "Session replay is the reproduction of a user's interactions on web or native mobile applications. Session replay captures things like mouse movements, clicks, typing, scrolling, swiping, tapping, etc." Session Replay allows companies to "to pull up any user who ha[s] visited [a] website and watch their journey as if [the company] was standing over their shoulder." A company can "see every click, every tap and exactly what the website responded with – an error, a success message, or nothing."

19. QM says its Session Replay feature "capture[s] all the metadata behind the replay— like user platform, API calls, and network details—as well as dozens of out of the box events and errors, plus the custom ones you'll configure in our UI."

20. QM's product demo allows a preview of the Session Replay interface and demonstrates how the software works, highlighting that the software allows a company to see each website visitor's electronic communications, including what a visitor clicked on, when a visitor reloaded a page, and where a visitor's mouse pointer is located at any given moment.

21. QM notes that "[o]nce data is captured, it's sent encrypted via a forward secrecy SSL connection, to the Quantum Metric cloud service, hosted in a secured Google Compute cloud."

22. QM's website includes a marketing video that discusses the Session Replay feature. The video touts that companies can "[s]ee actual customer interactions." The marketing presentation then shows a mock mobile user visiting and interacting with a website. The video

4

shows what items the visitor viewed and added to their cart. The presentation then proceeds to show where exactly the mock visitor clicked on the website.

23. Technology like QM's is not only highly intrusive, but dangerous. A 2017 study by Princeton University found that session recording technologies like QM's Session Replay were collecting sensitive user information such as passwords and credit card numbers. The research notes that this wasn't simply the result of a bug, but rather insecure practices. Thus, technologies such as QM's leave users vulnerable to data leaks and the harm resulting therefrom.

24. QM's business model involves entering into voluntary partnerships with various companies and providing their software to their partners.

25. One of QM's partners is 1-800 Contacts.

26. 1-800 Contacts has installed and utilizes QM's software on its Website for the purpose of capturing information about the visitors on its Website.

27. 1-800 Contacts knows that QM's software captures the keystrokes, mouse clicks, and other communications of visitors to its Website, and pays QM to supply that information.

28. Pursuant to an agreement with QM, 1-800 Contacts enabled QM's software by intentionally embedding QM's software code on the Website.

29. As currently deployed, QM's software, as employed by 1-800 Contacts, functions as a wiretap.

**Defendant Wiretapped or Facilitated the Wiretap of
Plaintiff's and Class Members' Electronic Communications**

30. On or around December 25, 2020, Plaintiff visited 1800contacts.com.

31. During Plaintiff's visit to the Website, Plaintiff placed an order for prescription contact lenses.

5

32. During that visit, and upon information and belief, the Session Replay feature in QM's software as embedded on Defendant's Website created a video capturing each of Plaintiff's keystrokes and mouse clicks on the Website. The QM wiretap used by Defendant also captured the date and time of the visit, the duration of the visit, Plaintiff's IP address, his location at the time of the visit, his browser type, and the operating system on his device.

33. Class Members share a similar narrative, and each experienced the interception of their electronic communications while visiting Defendant's Website as a result of the QM software acting as a wiretap.

34. Defendant's and QM's tracking and recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a visitor first accesses or interacts with Defendant's Website.

35. When visitors access the Website and make a purchase, they enter personally identifiable information ("PII") and protected health information ("PHI"). QM's software captures these electronic communications throughout each step of the process.

36. QM's software captures, among other things:

   (a) The visitor's mouse clicks;

   (b) The visitor's keystrokes;

   (c) The visitor's email address;

   (d) The visitor's shipping and billing address;

   (e) The visitor's payment card information, including card number, expiration date, and CVV code;

   (f) The visitor's prescription information and other PHI;

   (g) The visitor's IP address;

6

(h) The visitor's location at the time of the visit; and

(i) The visitor's browser type and the operating system on their devices.

37.     Crucially, Defendant 1-800 Contacts does not ask visitors, including Plaintiff and Class Members, whether they consent to being wiretapped by Defendant and QM. Visitors are never actively told that their electronic communications are being wiretapped by Defendant and QM.

38.     Further, 1-800 Contacts' privacy policy is located at the very bottom of the Website's home page with no notice directing visitors to the privacy policy, *i.e.*, the hyperlink to the privacy policy functions as browserwrap. Additionally, Defendant began recording visitors before any purported disclosure was made *after* the wiretap had already begun.

39.     Moreover, visitors are not on notice of the hyperlink to the privacy policy when they select to place an order, or at any other time during their visit to the Website.

40.     Therefore, visitors like Plaintiff and Class Members never agree or are never given the option to agree to the privacy policy when using the Website, nor are they on notice of the privacy policy.

41.     Even if visitors do agree to the privacy policy by using the Website or otherwise—and they do not for the reasons stated above—1-800 Contacts does not mention QM or its Session Replay software (such as by disclosing that visitors will have their mouse clicks and keystrokes recorded in real time) in the Website's privacy policy. As such, visitors do not agree to be wiretapped even if they agree to the privacy policy.

42.     Plaintiff and Class Members did not consent to being wiretapped on the Website, nor to having their communications recorded and shared with QM and Defendant. Any purported consent that was obtained was ineffective because (i) the wiretapping began from the moment

7

Plaintiff and Class Members accessed the Website; (ii) the privacy policy did not explicitly disclose the wiretapping or QM; and (iii) the hyperlink to the privacy policy is inconspicuous and therefore insufficient to provide notice.

### CLASS REPRESENTATION ALLEGATIONS

43. Plaintiff seeks to represent a class of similarly situated individuals pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3), consisting of:

> Florida residents who visited the Website, and whose electronic communications were intercepted or recorded by QM on behalf of Defendant, without their prior consent (the "Class" or "Class Members").

44. Defendant and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

45. Plaintiff brings all claims in this action individually and on behalf of Class Members against Defendant.

### Numerosity

46. Members of the Class are so numerous that their individual joinder is impracticable.

47. On information and belief, Members of the Class number in the thousands.

48. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

49. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

### Commonality

50. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.

8

51. Common legal and factual questions include, but are not limited to, whether Defendants have violated the Florida Security of Communications Act ("FSCA"), Fla. Stat. §§ 934.03 and 934.04, and invaded Plaintiff's privacy rights in violation of Florida law; and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

**Typicality**

52. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other Class Members, visited Defendant's Website and had his electronic communications intercepted and disclosed to QM and Defendant through the use of QM's wiretaps on Defendant's Website.

**Adequacy of Representation**

53. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.

54. The interests of Class Members will be fairly and adequately protected by Plaintiff and his counsel.

**Superiority**

55. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.

56. Many of the Class Members likely lack the ability and/or resources to undertake the burden and expense of individually prosecuting what may be a complex and extensive action to establish Defendant's liability.

57. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. This strain on the parties and the judicial system would be heightened in this case, given the complex legal and factual issues at play.

58. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

59. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.

60. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Violation of the Florida Security of Communications Act, Fla. Stat. § 934.03

61. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 60 as if fully set forth herein.

62. Plaintiff brings this claim individually and on behalf of the Class Members against Defendant.

63. To establish liability under Fla. Stat. § 934.03, captioned "Interception and disclosure of wire, oral, or electronic communications prohibited," a plaintiff need only establish that a defendant:

> (a) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication;
>
> (b) Intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:

10

> 1. Such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
>
> 2. Such device transmits communications by radio or interferes with the transmission of such communication;
>
> (c) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
>
> (d) Intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or
>
> (e) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication intercepted by means authorized by subparagraph (2)(a)2., paragraph (2)(b), paragraph (2)(c), s. 934.07, or s. 934.09 when that person knows or has reason to know that the information was obtained through the interception of such a communication in connection with a criminal investigation, has obtained or received the information in connection with a criminal investigation, and intends to improperly obstruct, impede, or interfere with a duly authorized criminal investigation.

Fla Stat. § 934.03(1).

64. Pursuant to Fla. Stat. § 934.02, "'Electronic communication' means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects intrastate, interstate, or foreign commerce[,]" such as through the internet.

65. At all relevant times, QM's software, including the Session Replay feature, was intentionally used by Defendant to intercept, endeavor to intercept, use, endeavor to use, disclose, and/or endeavor to disclose Plaintiff's and Class Members' electronic communications.

11

66. At all relevant times, by using QM's technology, Defendant willfully and without the consent of all parties to the communication, in an unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and Class Members, while the electronic communications were in transit or passing over any wire, line, or cable, or were being sent from or received at any place within Florida.

67. Defendant aided, agreed with, and conspired to implement QM's technology and to accomplish the wrongful conduct at issue here.

68. Plaintiff and Class Members did not consent to any of Defendant's actions in implementing QM's wiretaps on the Website. Nor have Plaintiff or Class Members consented to Defendant's intentional access, interception, reading, learning, recording, and collection of Plaintiff and Class Members' electronic communications.

69. The violation of Fla. Stat. § 934.03 constitutes an invasion of privacy sufficient to confer Article III standing.

70. Unless enjoined, Defendant will continue to commit or facilitate the illegal acts alleged herein.

71. Plaintiff and Class Members seek all relief available under Fla. Stat. § 934.10, including declaratory and injunctive relief, statutory damages at the rate of $100 a day for each day of violation or $1,000, whichever is higher, punitive damages, attorneys' fees, and costs.

### COUNT II

### Violation of the Florida Security of Communications Act,
### Fla. Stat. § 934.04

72. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 60 as if fully set forth herein.

12

73. Plaintiff brings this claim individually and on behalf of the Class Members against Defendant.

74. Fla Stat. § 934.04 provides a private right of action against:

> [A]ny person who intentionally:
>
> (a) Sends through the mail or otherwise sends or carries any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the illegal interception of wire, oral, or electronic communications as specifically defined by this chapter; or
>
> (b) Manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the illegal interception of wire, oral, or electronic communications as specifically defined by this chapter[.]

Fla Stat. § 934.04(1).

75. At all relevant times, by implementing QM's wiretaps, Defendant intentionally possessed a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communications of another.

76. QM's code is a "device" that is "primarily useful" for eavesdropping. That is, QM's embedded code is designed to gather PII, including keystrokes, mouse clicks, and other electronic communications.

77. Plaintiff and Class Members did not consent to any of Defendant's actions in implementing QM's wiretaps.

78. Plaintiff and Class Members seek all relief available under Fla. Stat. § 934.10, including declaratory and injunctive relief, statutory damages at the rate of $100 a day for each day of violation or $1,000, whichever is higher, punitive damages, attorneys' fees, and costs.

13

## COUNT III

### Invasion of Privacy Under Florida Law

79. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 60 as if fully set forth herein.

80. Plaintiff brings this claim individually and on behalf of the Class Members against Defendant.

81. Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII and/or PHI; and (2) making personal decisions and/or conducting personal activities without observation, intrusion, or interference.

82. At all relevant times, by implementing QM's wiretaps on 1-800 Contacts' Website, Defendant intentionally invaded Plaintiff's and Class Members' privacy rights under Florida law.

83. Plaintiff and Class Members had a reasonable expectation that their PII, PHI, and other data would remain confidential and that Defendant would not install wiretaps on the Website.

84. Plaintiff and Class Members did not consent to any of Defendant's actions in implementing QM's wiretaps on the Website.

85. This invasion of privacy is serious in nature, scope, and impact.

86. The invasion of privacy alleged herein constitutes an egregious breach of the social norms underlying the right to privacy.

87. Plaintiff and Class Members seek all relief available for invasion of privacy claims under Florida law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

14

(a) For an order certifying the Class under Florida Rule of Civil Procedure 1.220 and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all Counts asserted herein;

(d) For compensatory, punitive, and/or statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

### JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

### DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, or other itemizations associated with the allegations herein, including all records, lists, electronic databases, or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

Dated: March 16, 2021

Respectfully submitted,

By:   <u>/s/ Brian Levin</u>                      <u>/s/ Avi R. Kaufman</u>

| | |
|---|---|
| **LEVIN LAW, P.A.** | **KAUFMAN P.A** |
| Brian Levin, Esq. | Avi R. Kaufman, Esq. |
| Florida Bar No. 26392 | Florida Bar No. 84382 |
| 2665 South Bayshore Drive, PH-2B | 400 Northwest 26th Street |
| Miami, Florida 33133 | Miami, Florida 33127 |
| brian@levinlawpa.com | kaufman@kaufmanpa.com |
| (305) 402-9050 | (305) 469-5881 |
| | |
| *Counsel for Plaintiff and Putative Class* | *Counsel for Plaintiff and Putative Class* |

16